[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff Susan K. Hefti appeals the decision of the defendant Commission on Human Rights and Opportunities (CHRO), dismissing her complaint of age discrimination against Fairfield University (University) and its agent, Dr. Lisa Newton. The CHRO acted pursuant to General Statutes46a-94a and 4-183. The court finds in favor of the plaintiff and remands the case for a new investigation of plaintiff's complaint.
The following facts are undisputed and/or reflected in the record. On March 8, 1991, the plaintiff filed a complaint with the CHRO alleging that the University and its agent, Dr. Newton, discriminated against her on the basis of her age. Specifically, the plaintiff alleged that the University and Newton offered a teaching position for the spring of 1991 to Catherine Dillingham rather than to the plaintiff and, in effect, discharged the plaintiff because of the plaintiff's younger age. The University took this action in September, 1990, when Dillingham was 60 years of age and the plaintiff was 32. The course offering in question was Applied Ethics 284 (AE 284) in the Program of Environmental Studies. Newton was the program director.
In her complaint, the plaintiff alleged that Newton did not offer any explanation for favoring Dillingham over her. She also alleged that she successfully taught AE 284 for CT Page 1112 several semesters, was initially offered the position for spring 1991, has credentials superior to Dillingham's, and was fully entitled to the position. She claimed that both Newton and Dr. David Danaher, Dean of the College of Arts and Sciences, independently stated that she did not get the position because she was the "junior" member of the department. Since she was hired before Dillingham, however, she claimed that the word "junior" referred to her age.
The University hired both the plaintiff and Dillingham as adjunct professors to teach AE 284 at various times during the period from the spring semester in 1989 through the spring semester of 1991. Adjunct professors are not permanent employees of the University but rather are hired to teach specific courses as the need arises. Their appointment for each course is contingent upon a minimum student enrollment, usually ten students in a section. The number of adjunct professors who are ultimately hired in any semester, therefore, depends upon the number of students who enroll in the course. The University would occasionally cancel the appointment of a teacher because the final student enrollment was less than anticipated. The hiring pattern for the AE 284 course over the period in question was as follows:
Semester Teacher(s)
Summer 1989 Hefti
Fall 1989 Dillingham
 Spring 1990 Hefti Dillingham
 Fall 1990 Hefti Dillingham — cancelled
 Spring 1991 Dillingham Hefti — cancelled
The University's decision to cancel the plaintiff's appointment and retain Dillingham to teach the course in the Spring 1991 semester was the focus of the plaintiff's complaint to the CHRO. Although she did not dispute the University's right to limit hiring teachers on the basis of student enrollment, she claimed that the University impermissibly CT Page 1113 chose Dillingham on the basis of her age when the enrollment would support only one teacher.
By letter dated March 14, 1991, the CHRO notified the University of the plaintiff's complaint against it and requested an answer. Thereafter, the University sent correspondence and documents to Bruce R. Julianelle, Regional Manager of the CHRO in Bridgeport.
By letter dated May 10, 1991, John C. Presutti, CHRO Investigator, notified plaintiff that her complaint had been assigned to him. Thereafter, evidence was submitted to and gathered by Investigator Presutti. On or about July 23, 1991, Presutti issued a "Finding of No Cause and Summary" marked "Preliminary Draft for Review Purposes Only" (draft finding) in which he recommended that the complaint be dismissed for lack of sufficient evidence to support the allegation." This draft finding was reviewed by Regional Manager Julianelle, who then sent a copy of it to the plaintiff with a letter dated July 23, 1991. In his letter, Julianelle stated that he concurred with the draft finding and that the plaintiff had fourteen days to comment on it.
The plaintiff submitted her comments, new evidence and her rebuttal to the findings on or about August 5, 1991. By notice dated September 12, 1991, Leslie J. Brett, CHRO Chairperson, informed the plaintiff that she accepted the investigator's recommendation to dismiss the complaint for lack of sufficient evidence.
The plaintiff then requested reconsideration of the disposition by letter dated September 26, 1991. She supplemented her request with a letter dated November 7, 1991. By notice dated February 13, 1992, Chairperson Brett informed the plaintiff that her request for reconsideration was reviewed and rejected. The "Decision of Reconsideration Request" was included with the letter.
The plaintiff filed her appeal in this court on March 26, 1992. Following the submission of briefs by the plaintiff and the CHRO, the court heard oral argument by counsel on November 10, 1992. Subsequently, on November 20, 1992, the plaintiff sought permission to file a supplemental brief. The CHRO objects. The court is of the opinion that the plaintiff had ample opportunity to present her case in CT Page 1114 her original brief and to respond to the CHRO during oral argument. Accordingly, the CHRO's objection to the filing of a supplemental brief is sustained.
The plaintiff advances two principal bases for her appeal of the CHRO's dismissal of her complaint. These are (1) that the CHRO's refusal to investigate, review and consider certain evidence was arbitrary, capricious, and an unwarranted exercise of discretion; and (2) that the CHRO's decision was not supported by reliable, probative and substantial evidence on the whole record.
With respect to aggrievement, the plaintiff claims that the University discriminated against her in violation of General Statutes 46a-60(a)(1). That statute forbids any discrimination in the workplace on account of the employee's age. Therefore, the court finds that the plaintiff has a specific, personal and legal interest in the subject matter of the CHRO's decision. Since the CHRO found the issues in favor of the University, the plaintiff's legal interest has been specially and injuriously affected by the decision. Aggrievement is established if there is a possibility that some legally protected interest has been adversely affected. Light Rigging Co. v. Department of Public Utility Control,219 Conn. 168, 173 (1991). The court concludes that plaintiff is aggrieved within the meaning of 46a-94a and4-183 and Light Rigging, supra.
As reflected in the record, the facts concerning the CHRO's investigation of the plaintiff's complaint are essentially undisputed. When the CHRO first notified the University of the plaintiff's complaint and requested a response, it indicated that the University should include a "[l]ist by name, job title, department name, date of discharge, reason for discharge, and age of all professors discharged in 1990." The University responded by declining to provide the information on the basis that it would not be "probative and would be difficult if not impossible to provide." The CHRO then renewed its request, stating that it was "imperative" that the University furnish the information. The University again declined, stating that "Adjuncts are not discharged, they simply are not rehired if a course or section they were teaching is not offered at any particular time." The University essentially ignored the CHRO's request insofar as it pertained to non-adjunct CT Page 1115 professors.
No age data was ever supplied by the University and the lack of such data was not mentioned in the CHRO's decision. In her response to the investigator's draft finding and in her application for reconsideration, the plaintiff requested the CHRO to pursue this "vital" information. In the Decision on Reconsideration Request, the CHRO responded:
 Complainant was an adjunct professor, a professor on contract on a by [sic] semester basis, as needed. As complainant was not a full time faculty member, obtaining age date [sic: data] throughout the Department and University is not germane to her allegation of termination due to age.
In its brief to the court, the CHRO argues that the age data evidence might be relevant in establishing a prima facie case of discrimination but that it is "inapplicable" in the investigatory stage, citing Adriani v. CHRO, 220 Conn. 307
(1991). This argument is without merit. The age data is relevant to the investigation of alleged discriminatory acts because the existence of university-wide discrimination, whether of permanent or temporary employees, would render the existence of such discrimination in this case more probable. Of course, such data might also be relevant at a CHRO hearing on the substance of the plaintiff's claim, but that conclusion surely does not make the data irrelevant to the preliminary reasonable cause determination. During the course of the investigation, the plaintiff provided a list of witnesses and a summary of the testimony she believed they would give to the investigator. It contained the following:
 1. The names of several students who allegedly had stated that Newton treated the plaintiff as an inferior, "like a child", because of her age;
 2. Mrs. Marjorie Hale, to whom the plaintiff allegedly had contemporaneously confided about acts of age discrimination;
 3. Dillingham, who allegedly made discriminatory statements; CT Page 1116
 4. Newton, who allegedly made discriminatory statements;
 5. Danaher, who allegedly made discriminatory statements.
 6. Father Thomas Regan, who allegedly made discriminatory statements.
The CHRO investigation appears to have been minimal, at least with respect to interviewing witnesses. In the decision, the investigator states that he contacted the plaintiff by "field, telephone, letter." He contacted the attorney for the University by "telephone, letter." That attorney furnished the investigator affidavits from Newton and Danaher, but the investigator never interviewed them in person or otherwise. Likewise, he did not interview any other witnesses, nor did he obtain any other sworn statements. In a memorandum to his file, which is part of the record in this case, the investigator states, as his reason for not interviewing witnesses, that "to interview additional witnesses is unnecessary and not in the best interest of good case management since there is no prima facie case of disparate treatment."
The affidavits of Newton and Danaher were crucial to the investigator's ultimate finding of no reasonable cause and the dismissal of the plaintiff's complaint. In her affidavit, Newton states:
 7. Ms. Hefti is not academically more qualified than Ms. Dillingham. The decision to offer to Ms. Dillingham the Spring 1991 course was based on considerations of fairness since Ms. Hefti had been offered the course and Ms. Dillingham had not been offered the course for Fall, 1990 and with due consideration that Ms. Dillingham had taught longer in the program. All of the foregoing was explained to Ms. Hefti.
 8. I was not aware of the age of Ms. Hefti and it would have no bearing on arrangements made for the Spring, 1991 semester.
In his decision, the investigator makes the "Finding of Fact" that "[t]he decision to offer Ms. Dillingham the Spring CT Page 1117 1991 course was based on considerations of fairness since complainant had been offered the course and Ms. Dillingham had not been offered the course for Fall 1990" — that is, a verbatim adoption of Newton's affidavit. In his "Analysis", the investigator concluded that Newton's "articulated non-discriminatory reason appears believable and the real reason for selecting Ms. Dillingham over the complainant, i.e. . . . in the interest of fairness." In effect, the investigator based his ultimate finding and the dismissal of the plaintiff's complaint on the reasons Newton gave for cancelling the plaintiff's teaching appointment. In her original complaint and consistently throughout the investigation, the plaintiff alleged that Dean Danaher stated that her appointment was cancelled because she was "junior" to Dillingham. She further alleged that this diminutive could only refer to her age since she was actually senior to Dillingham in length of service. In his affidavit, Danaher merely states, "Dean Danaher does not recollect ever having used the term `junior' with Ms. Hefti."
In his decision, the investigator notes the plaintiff's allegation concerning Danaher's use of the term "junior" and Danaher's response (which the investigator mislabels as "testimony"). In view of his conclusion that the University's action was not based on age discrimination, however, it appears that he does not believe Danaher made the discriminatory remark.
As indicated, the investigator did not interview Newton and Danaher. He never took the opportunity, therefore, to pursue with them any of the specific charges that the plaintiff made concerning their alleged age bias and discrimination. Nor did he take the opportunity to test their credibility in face-to-face, give-and-take interviews. Rather, he simply afforded full credibility to their written statements, as furnished by their attorney, to the extent that those statements contradicted the plaintiff's complaint.
The CHRO attempts to minimize the failure of its investigator to interview other witnesses on the grounds that their purported statements and remarks were innocuous, not evidence of discrimination, unreliable, hearsay, or otherwise not worthy of investigation.
The CHRO's arguments in support of the investigatory CT Page 1118 procedure that was followed in this case have scant basis in the law. The CHRO investigator's rationale for not interviewing witnesses was that "there is no prima facie case of disparate treatment." Record, p. 80. This puts the cart before the horse. The prima facie case concept belongs in the CHRO hearing procedure, not in the investigative stage. Adriani v. CHRO, supra, 316. In effect, the investigator placed an entirely inappropriate burden on the plaintiff during the investigation of her complaint. Similarly, in its brief, the CHRO argues that the investigator was justified in not interviewing witnesses because he could conclude in advance that their statements would be unreliable or not probative. But such arguments overlook one of the essential purposes of an investigation, which is to determine the credibility of witnesses and the reliability and relevance of their statements.
"[T]he reasonable cause standard requires the commission to consider all reliable probative evidence, including evidence unfavorable to the complainants claim." Adriani, supra, 316-17. A "necessary corollary is that in making the reasonable cause determination, the investigator, and the commission when reviewing the investigator's recommendation, are entitled to make findings on disputed issues of material fact by weighing the credibility of witnesses and drawing inferences." Id., 317. However, this power is conditional.
 The power of the commission, through its investigators, to make findings of material fact as part of the reasonable cause determination, and the trial court's obligation to review such findings under the substantial evidence standard, is conditional upon the commission having conducted a thorough investigation of the claim and having relied only upon reliable, probative evidence in making those findings. In undertaking its investigation, the commission is obligated to pursue evidence corroborating, as well as contradicting, the plaintiff's complaint.
Id., 319 (emphasis added). The court noted with approval that in that case the CHRO's investigator interviewed thirteen people, even though the plaintiff had failed to name witnesses who might corroborate his complaint. By contrast, in the present case, the investigator declined to interview the witnesses whom Ms. Hefti did name. CT Page 1119
The CHRO's argument that some of the witnesses' statements would be hearsay is likewise not persuasive. "It is well established that . . . hearsay is admissible if it is reliable and probative." Id., 319 n. 11.
On the basis of its review of the whole record in this case, the court concludes that the CHRO failed in discharging its obligation to conduct a thorough investigation of the plaintiff's complaint. The investigator made his determination of no reasonable cause based in large part on the written statements of University employees. He never interviewed them, however, so as to make any reliable assessment of their credibility. He also refused to interview witnesses who might have corroborated the complaint, and the reason he gave for this failure, "case management" considerations, has no basis in the law. Furthermore, the CHRO failed to pursue potential evidence of University-wide age discrimination, which would have been relevant to its investigation in this case.
"[D]ismissal of a claim on the basis of a determination of no reasonable cause, without a hearing, effectively ends the claimant's quest for justice." Adriani v. CHRO, supra, 331 (Borden, J., concurring in part and dissenting in part). The grant of such power to the CHRO carries with it the heavy obligation to treat each claim with the utmost seriousness and to conduct a thorough investigation. The failure to do so requires that the CHRO dismissal of a claim be reversed. General Statutes 4-183(j)(6) and (k). In view of the court's decision on this issue, it is unnecessary to consider the plaintiff's arguments with respect to the sufficiency of the evidence.
The plaintiff's appeal is sustained and the case is remanded for a new investigation by the CHRO.
MALONEY, J.