[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DICISION
Plaintiff brings this action in two counts by amended complaint dated and filed June 8, 2000, for wrongful discharge. Defendant puts forth four special defenses to each count.
 FACTS
CT Page 8957
On or about March 1, 1995 the plaintiff became employed by defendant, a package delivery service company with less than forty employees.
His job was as a dispatcher, which included assigning drivers to deliver packages, taking orders for delivery of individual packages by phone, calling the driver assigned, putting the transaction in the computer, pulling tickets from the printer, making notes on the tickets and organizing the tickets. He did not handle the packages themselves. There were forty or fifty "slots" into which some dispatchers put the tickets. Plaintiff said he used slots but did not explain why their use was necessary for his performance.
His starting pay was $8 per hour. He was given a fair to good evaluation by defendant as to his work on June 5, 1995. Shortly after that he was raised to $10 per hour and paid at that rate through September 1995. No promises were made to him by the defendant that future raises would be given.
He sat much of the time in an adjustable chair on rollers but often stood. The court cannot find that his job required standing for more than four hours in any one work-day. In his job it was not necessary to kneel, squat or walk up stairs.
On August 7, 1995 plaintiff mailed a letter to the Hartford Courant newspaper in response to a defendant ad about a dispatcher position.
On August 8, 1995 he tripped over something at work about 5:00 or 6:00 a.m. and injured his right knee. He told Sweet, a defendant employer about the injury.
He finished his shift which ran from 3:30 a.m. to 11:30 a.m. He went to work August 9, 1995 and the right knee was swollen. He went to Dr. Dugdale that day and went to work August 10, 1995, at which time he felt he could not perform and left.
The doctor found he had a knee cartilage problem and said plaintiff should stay off his leg until August 14, 1995. The doctor told a defendant management employee, Andrew Teebagy, about this. Plaintiff also told Teebagy that he was scheduled for knee surgery on or about August 17, 1995.
The surgery was performed and on August 29, 1995. Dr. Dugdale said plaintiff would be able to return to his "usual" work on September 11. On September 1, 1995 he issued a work slip which was given to defendant that said plaintiff "is able to return to work REGULAR 9/18/95". Plaintiff CT Page 8958 stayed out of work until September 18, 1995. He went to work that day but said he could not do his job because his knee was swollen and it was hard to bear weight on that leg. He came to work on September 19 and 20 but the knee was still bothersome and he talked to both defendant management employees, Teebagy and Mr. Michael Knight, about his problems. Accommodations were made in plaintiff's work for over one week to determine when plaintiff would be able to do his regular work. He worked on September 22 and knee was less swollen.
On September 25, 2000 plaintiff talked to Teebagy about the Hartford Courant ad and his response to it. Then Teebagy asked plaintiff for a letter from his doctor and plaintiff's injury and possible work restrictions.
He went to work on September 27 and worked until 8:00 a.m. when Teebagy came in and asked plaintiff for the requested doctor's report. When plaintiff did not produce any medical information from a doctor Teebagy sent him home. He worked on September 28 and knee still a problem he told Mr. Knight.
During this period plaintiff had requested some modifications of his work area which he claimed were needed to accommodate his injury.
He came in September 29 and had a meeting with Teebagy who told him to work in the dispatcher room for four hours and plaintiff said he would but only if the modifications were done. Teebagy then fired him. His supervisor Mr. Knight, thought plaintiff could have done the job as asked by Teebagy.
On or about September 29 Dr. Dugdale sent a letter to plaintiff telling him that he should "avoid repetitive squatting, kneeling or frequent use of stairs. It may be difficult for you to stand more than 4 hours per work shift." Neither this letter nor a copy was ever delivered to defendant. That standing restriction could be in 30 minute segments.
Plaintiff seeks reinstatement now but has not yet said at what pay rate.
At the end of the plaintiff's case defendant moved for judgment and the court reserved decision on that motion.
 LAW STATE LAW
Under the definitions of C.G.S. § 42a-51 (9), (10) and (15), plaintiff was an "employee" of defendant which was an "employer" and he CT Page 8959 may have been "physically disabled" at some times between August 8, 1995 and September 18, 1995. The plaintiff must prove that he was disabled.Andriani v. Commission on Human Rights and Opportunities, 220 Conn. 307.
To prove employer discrimination under C.G.S. § 42a-60 plaintiff must prove that defendant discriminated against him "because of [his] present or past history of . . . physical disability . . .". Plaintiff worked for defendant from March 1, 1995 without any problem through August 8, 1995. The court can find no evidence that the defendant in any way discriminated against plaintiff based on his past history.
The defendant had clear medical evidence that plaintiff was able to work at his usual duties, without restriction, beginning September 18, 1995. Plaintiff refused to do that. Nor did he provide the defendant with any other medical evidence before he was fired.
 FEDERAL LAW
Under 42 U.S.C. § 12112, the Americans With Disabilities Act (ADA), an employer may not discriminate against any "qualified individual with a disability because of the disability". To prevail under ADA plaintiff must prove (1) that he has a disability as defined in the statute; (2) that his employer is covered by the statute; (3) that his employer had notice of the disability; that he was able to perform the essential functions with reasonable accommodations or without accommodations; and (4)(a) he was subject to adverse employment action because of his disability or (4)(b) his employer refused to make reasonable accommodations to allow him to work with his disability.
Certainly plaintiff may have been disabled at some time and his employer is covered by the statute but there is no evidence that his employer knew of his disability. In fact, employer was told by plaintiff's doctor that plaintiff was not disabled from his usual work.
This court is to find whether plaintiff was disabled on September 29, 1995. Worthington v. City of New Haven, 1999 W.L. 958627 (D. Conn) (Burns, Senior J.) The court cannot find that he was disabled because the better and weightier evidence, particularly from Dr. Dugdale but also from McKnight, shows he was not.
As to reasonable accommodations, the plaintiff has failed to prove that those accommodations he suggested were necessitated by any disability he had.
Judgment for the defendant. CT Page 8960
Norris L. O'Neill, J.