[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 4637
The plaintiff, Kevin Hackett, has filed this appeal from the determination by the Commission on Human Rights and Opportunities ("CHRO" or "Commission") that reasonable cause did not exist to believe that he had been discriminated against in connection with his application for rental housing by Waterbury First Church Housing, Inc. d/b/a Robin Ridge Apartments, which operates a housing complex for elderly and disabled people, and against its office manager and property manager ("respondents").
On March 9, 1994, the CHRO dismissed the plaintiff's complaint, which had been filed on December 16, 1993, finding "no reasonable cause for believing that a discriminatory practice had been or is being committed as alleged in the complaint." (Record, Doc. 20, page 20.)
History of Proceedings
On December 16, 1993, the plaintiff filed with the CHRO a complaint consisting of a cover sheet addressed to the CHRO to which was attached a complaint form bearing the date August 3, 1993 directed to the United States Department of Housing and Urban Development Office of Fair Housing and Equal Opportunity.
The plaintiff checked off the boxes on the HUD complaint form indicating that he believed he had been discriminated against on the basis of physical and mental handicap.
The CHRO investigated the complaint as a complaint of violation of General Statutes § 46-64c(2). (Record, Doc. 13.) The CHRO interviewed the complainant and other witnesses and issued a preliminary draft of its investigative report, notifying the plaintiff of his right to provide written or oral comments within fifteen days. (Record, Doc. 13.)
In its preliminary draft, the CHRO identified the "Issue" of the discrimination complaint to be adjudicated as follows:
 "Issue: Did the respondent deny complainant the opportunity to rent an apartment based on his physical disability, leg amputee?"
(Record, Doc. 13.) CT Page 4638
The plaintiff filed three pages of detailed comments concerning the draft report. He did not indicate any disagreement with the above statement of the issue or the CHRO's description of the scope of his complaint; rather, he reiterated that he had been told the complex had reached its quota for handicapped residents and he disputed the conclusion that his arrest record substantiated fears that he would be a threat to residents of the complex.
The CHRO issued its final investigative report on March 9, 1994. (Record, Doc. 20.) The CHRO set forth the "Issue" in exactly the same words as in the preliminary draft. In the final report, the respondent Robin Ridge Apartments is identified as a building owned by the Waterbury First Church Housing, Inc. of Waterbury for housing for persons over age 62 and for "persons afflicted with disabilities."
The report sets forth the contents of interviews with Karen Sheehan, a social worker from the nursing home where the plaintiff resided; Edward Duval, president of Van-Court Property Management Services, Ltd., the management company that managed the building at the time; Diane Dodge, the property manager; Sharon Gagnon, office manager for the building; and Elizabeth Hackett, the plaintiff's mother. The report states that the investigator interviewed the plaintiff by telephone because of his difficulty in securing public transportation.
The CHRO found that the plaintiff had had a leg amputated in 1985 as a result of a motorcycle accident, and that he had been injured in a hit-and-run accident in 1992 that resulted in his confinement to a wheel chair. The CHRO found that at the time the plaintiff toured the apartments, the three units that were handicapped accessible were currently filled, with a waiting list. The CHRO found that at the time of plaintiff's application the respondent housed eighteen persons with handicaps, including a total of ten who used wheelchairs.
The CHRO found that when the property manager called to talk to the plaintiff about his application, she was told by a woman who answered the telephone that "she did not know if he would be going to jail." On the basis of this comment, the management company obtained the plaintiff's arrest record, which included four arrests for driving while intoxicated, including an arrest on June 21, 1992. CT Page 4639
On his application, the plaintiff indicated that he did not have sufficient income to rent a unit. The investigator found that while his mother indicated willingness to add $200.00 per month to pay the plaintiff's rent, she failed to complete an application and did not agree to sign a lease as co-tenant. (Record, Doc. 20, page 16.)
The CHRO determined that the plaintiff's arrest record had been obtained because of the respondent's concern for the elderly residents of the facility and because of the statement about jail and not because of the plaintiff's having a leg amputation. The agency found he had been denied a rental unit because of his arrest record, and because his application contained "several points of inaccurate information or information that raised concerns with respondent," including the prospect that he would not be able to pay his rent.
The CHRO concluded that "the facts are such that a person of ordinary caution, prudence, and judgment could not believe there is reasonable cause for believing that a discriminatory practice has been or is being committed as alleged in the complaint." (Record, Doc. 20, p. 17.)
The next stage of the proceedings is disputed. The plaintiff takes the position that he filed a timely request for reconsideration of the finding of no reasonable cause. In a letter dated July 11, 1994, the CHRO took the position that it had received his request for reconsideration on April 8, 1994, and that it was untimely. The CHRO advised the plaintiff that "[t]his denial of reconsideration is the Commission's final decision on your complaint" and advised him that he could appeal the denial within forty-five days "after the mailing of this letter." This appeal was served on the respondent and the CHRO on August 24, 1994.
Jurisdiction
The CHRO moved to dismiss the appeal as untimely, claiming that the plaintiff failed to appeal within forty-five days of March 9, 1994, the date of the finding of no reasonable cause. The court, W. Sullivan, J., denied the motion to dismiss and found that the Superior Court has subject matter jurisdiction over this appeal. CT Page 4640
In response to a request to revise, the plaintiff filed a revised appeal. The CHRO again moved to dismiss, stating that the court lacks jurisdiction because of late filing and invoking a recent Supreme Court decision, CHRO v. Windsor Rest Home,232 Conn. 181 (1995). The court, W. Sullivan, J., again denied the motion to dismiss.
As a special defense in its answer to the appeal and its brief on appeal, the CHRO raises again as an issue its position that this court lacks subject matter jurisdiction. This court will treat Judge Sullivan's rulings as the law of the case on the issue of jurisdiction, Breen v. Phelps, 186 Conn. 86, 99-100
(1982), and proceed on the basis that the Superior Court has jurisdiction to decide this appeal.
Standard of Review
The scope of judicial review of a commission's determination that there is no reasonable cause to believe that a discriminatory practice has been committed is limited. The court must determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those findings are reasonable. Dufraine v. Commission on Human Rights Opportunities, 236 Conn. 250, 259 (1996); Adriani v. Commissionon Human Rights and Opportunities ("Adriani I"), 220 Conn. 307,314-15 (1991); Connecticut Light Power Co. v. Department ofPublic Utility Control, 216 Conn. 627, 639 (1990).
 The substantial evidence standard is satisfied if the record provides a substantial basis of fact from which the fact in issue can be reasonably inferred. . . Adriani I, supra, 220 Conn. 315. The issue before the trial court, therefore [is] whether there [is] a substantial basis in the record to support the commission's finding of no reasonable cause for [his] allegations of discrimination.
Dufraine, 236 Conn. 260-61.
The trial court may not substitute its judgment for that of the commission with respect to questions of fact. Dufraine,236 Conn. 264 n. 11; General Statutes § 4-183(j); Levinson v.Board of Chiropractic Examiners, 211 Conn. 508, 536 (1989).
Before the substantial evidence test can be applied, however, CT Page 4641 the court must determine whether there are "procedural irregularities that implicate the validity of the decision itself." Adriani v. CHRO, 220 Conn. 307, 327 (1991). The failure of the CHRO to investigate all of the claims of discrimination made and to construe the complaint as alleging a different or narrower claim than is alleged would be such an irregularity unless, as in Adriani, 220 Conn. 320 n. 12, 323 n. 15, the same factual issues are included in the complaint as construed and as filed.
1. Claim of non-investigation of alcoholism issue
The plaintiff now claims that the CHRO failed to investigate whether he had been subjected to greater scrutiny or denied housing because he was viewed as being impaired by alcoholism.
The administrative complaint that he filed does not, however, contain any such allegation. He did not claim to have been an alcoholic or to have been handicapped by alcoholism. The only reference to alcohol in the text of his administrative complaint is under a heading "Summarize in your own words what happened." In that space, the plaintiff identified his handicap as a leg amputation and stated that the respondents gave as a reason for refusing him housing that he would be a "potential danger" to other residents because of "possible alcohol abuse." The plaintiff now claims that this statement should have been investigated as a complaint of discrimination on the basis of being handicapped by alcoholism.
The Connecticut statute that prohibits housing discrimination against persons suffering from physical or mental disabilities, § 46a-64b(8), adopts the definition of "handicap" supplied by the federal Fair Housing Act.
While some courts have ruled that diagnosed alcoholism that impairs a person's ability to care for himself may constitute a "handicap" under the Fair Housing Act, § 42 U.S.C. § 3602(h),see Oxford House, Inc. v. Township of Cherry Hill,799 F. Sup. 450, 459-60 (D. N.J. 1992); United States v. Borough ofAudubon, N.J., 797 F. Sup. 353, aff'd without opinion, 968 F.2d 14
(3d Cir. 1992), the persons whose housing rights were at issue in those cases were found to be diagnosed alcoholics whose daily lives were actually impaired such as to constitute a "handicap" within the meaning of the federal statute. CT Page 4642
Plaintiff has not cited and this court has not located any case in which violent conduct accompanied by use of alcohol, rather than alcoholism, has been determined to be an "impairment" or "handicap".
The plaintiff did not claim to be an alcoholic when he applied for housing. He submitted the responses of his physician to a questionnaire prepared by the respondents. His doctor indicated that he did not suffer any impairments from alcohol dependency; and the physician did not indicate any mental disability. (Record, Doc. 3, 7.) The plaintiff did not upon appeal claim to be an alcoholic.
The CHRO investigator's notes of a telephone interview with the plaintiff contain no mention that he claimed to be handicapped by alcoholism or by any mental disability. (Record, Doc. 14.) While complaints filed by pro se complainants should not be narrowly construed, where, as here, the complaint contains no explicit claim of discrimination based on actual or perceived alcoholism and where the complainant foregoes several opportunities to advise the CHRO that such a claim is being made, the agency cannot be faulted for failing to perceive such a claim.
The administrative record contains lengthy comments by the plaintiff in a letter concerning the preliminary draft of the CHRO report. (Record, Doc. 19.) In that letter, the plaintiff made no comment that he had been discriminated against based on alcoholism, or that the CHRO had failed to investigate that claim. As has been noted above, in both the preliminary and final report, the CHRO identified the "Issue" to be investigated as follows: "Did the respondent deny complainant the opportunity to rent an apartment based on his physical disability, leg amputee?" The complainant did not advise the CHRO that it had misconstrued the issue or that it had failed to investigate what he felt the issue to be. (Record, Doc. 25.)
It is axiomatic that the CHRO must investigate those claims of discrimination set forth in the complaints filed by citizens. General Statutes § 46a-83. In his brief on appeal, the plaintiff argues as if his complaint had alleged discrimination on the basis of disability caused by the disease of alcoholism and faults the Commission for not finding reasonable cause with regard to such discrimination. In fact, this court must determine whether there was substantial evidence to support the finding of CT Page 4643 no reasonable cause as to the claim actually made, which the CHRO found to be, and the complainant never stated before the ruling was other than, a claim of discrimination based on the handicap occasioned by his leg amputation.
Substantial evidence
The evidence in the record indicated that the respondents provides housing to many similarly handicapped people. There is ample evidence to support the finding that the nonpretextual reason for denying the plaintiff's application was a good faith belief that the plaintiff would not be able to pay his rent and that his conduct, unrelated to any handicap, was likely to be disruptive to other handicapped and elderly residents. The CHRO's finding as to the claim that it reasonably construed the plaintiff to have made is supported by substantial evidence.
Conclusion
For the foregoing reason, the appeal is dismissed.
Beverly J. Hodgson Judge of the Superior Court