[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff John S. Morehouse appeals the dismissal by the defendant Commission on Human Rights Opportunities (CHRO) of his complaint of discrimination against his former employer, defendant Southern New England Telephone Systems, Inc. (SNET). This appeal is brought pursuant to General Statutes §§ 4-183
and 46a-83a. In his complaint, the plaintiff alleges that SNET terminated his employment based upon a physical disability in violation of General Statutes § 46a-60 (a)(1). For the reasons set forth below, the court find the issues in favor of the CHRO and dismisses the appeal.
The plaintiff filed his complaint with the CHRO on August 16, 1990. On March 31, 1992, the CHRO dismissed his complaint. On April 15, 1992, and pursuant to General Statutes (Rev. 1991) § 46a-38 (c), the plaintiff requested reconsideration of the dismissal. The CHRO granted the plaintiff's request on July 10, 1992. The plaintiff's complaint was again dismissed on August 13, 1996.
This appeal rests upon the following facts reflected in the record. In August 1984, the plaintiff became employed as a program manager of software integration at Sonecor, a division of SNET. In February 1985, he became program manager in engineering, then in June 1985, program manager of integrated systems (marketing). In September 1986, the plaintiff became a telecommunication specialist III (technical support). In September 1988, he moved from technical support to field support. During his five and one half years at SNET, the plaintiff reported to seven different supervisors. In October 1985, the plaintiff was injured in the course of his employment in an automobile accident. He suffered injuries to his neck, shoulder and back, but he missed no days from work as a result of these injuries. In 1987, 1988, and 1989[1], the plaintiff received unfavorable job performance evaluations. On February 22, 1990, he was terminated.
On August 16, 1990, the plaintiff filed a complaint with the defendant CHRO alleging that between October 1985, and February 1990, he was subjected to" discriminatory terms and conditions of employment and [termination] after taking action to oppose the discriminatory conduct. (Ex.A of SNET's brief.) The defendant CT Page 607 SNET filed an answer to the complaint, alleging that the performance evaluations and eventual termination were due to protracted poor job performance. (ROR 1731-1734.) Thereafter, the plaintiff filed a reply to the answer (ROR 784-790.)
The complaint was assigned to James Noonan a CHRO investigator. On March 31, 1992, Noonan issued a Finding of No Cause and Summary. In that determination, Noonan stated that he reviewed and analyzed the one hundred fifty-four documents submitted by the parties; and that he contacted seven individuals in his investigation. (ROR, 663-667.) The conclusion reads:
 Contrary to complainant's allegation, investigation shows that the complainant was not discriminated against because of a disability. No record exists to show that any of the complainant's supervisors during the period 1986-1990 were aware or concerned about a disability problem. No one interviewed said that they had ever discussed the complainant's disability because they were unaware that he had a disability. There was nothing in the complainant's personnel file that indicated that the complainant had a disability. The complainant's medical record is confidential and was never released to any of respondent's personnel. Complainant's record showed a consistent concern by various managers with the complainant's work performance. Efforts were made to find the complainant another position more suitable to his qualifications. The letter from complainant's attorney to the respondent was dated after the decision had been made to remove the complainant from the department and after the complainant had been made aware that this action would be taken. No pretext was found either in the treatment of the complainant, or the decision to terminate him. No effort to retaliate against the complainant was found. No pretext was found.
(roar 670.)
On April 15, 1992, the plaintiff filed a request for reconsideration which included seventeen new exhibits. (ROAR 533.) Over SNET's objection, the CHRO granted the request and assigned a new investigator to the complaint.[2] That investigator met with the plaintiff and his attorney. A fact finding conference was held in January 1996, and more documentary material was received from the parties. On August 13, 1996, the CHRO again dismissed the complaint finding no reasonable cause:
Based on the totality of the evidence and this designee's CT Page 608 assessment of the facts and information, it was concluded that the complainant's allegations of discrimination are not supported by the evidence. Consequently, as a result of the application of these principles to the facts of this complaint, the investigator concludes that there does not exist reasonable cause for believing that a discriminatory practice has occurred. In reaching this conclusion, the investigator took careful consideration of the complainant's alleged "New evidence". Suffice it to say, the same did not change and was not sufficient to overcome respondent's non discriminatory reason for termination the complainant. Complainant was not able to show that the termination was based on complainant's disability. Albeit, there is a written admission from complainant and confirmed by him in the Fact Finding conference that the reason or basis for his termination was "cost avoidance".
(ROR 29).
The plaintiff raises two grounds on his appeal. He first argues that the CHRO failed to conduct a complete and proper investigation of his complaint. Second, he argues that the CHRO's decision cannot be affirmed in light of the substantial evidence in the record.
The plaintiff's complaint with the CHRO was first filed in 1990. At that time, General Statutes § 46a-83 (a) provided for the executive director of the CHRO to refer the complaint to an investigator "to investigate and determine if there is reasonable cause for believing that a discriminatory practice has been or is being committed as alleged in the complaint."[3] If the investigator finds reasonable cause, then the plaintiff would have the opportunity to elect either an administrative hearing or a civil action. The term "reasonable cause" is defined within the statute as "a bona fide belief that the material issues of fact are such that a person of ordinary caution, prudence and judgment could believe the facts alleged in the complaint."
The Supreme Court has specifically set forth this court's limited scope of review of a CHRO determination of no reasonable cause. In Adriani v. Commission on Human Rights Opportunities,220 Conn. 307, 314-315 (1991), the Court reiterated the substantial evidence standard that applies to all administrative agency decisions:
 "Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the CT Page 609 administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable." Connecticut Light Power Co. v. Department of Public Utility Control. 216 Conn. 627, 639, 583 A.2d 906 (1990); Board of Education v. Commission on Human Rights Opportunities, 176 Conn. 533, 538, 409 A.2d 1013
(1979). The substantial evidence standard is satisfied if the record provides a "`substantial basis of fact from which the fact in issue can be reasonably inferred. . . .'" Lawrence v. Kozlowski, 171 Conn. 705, 713, 372 A.2d 110 (1976), cert. denied, 431 U.S. 969, 97 S.Ct. 2930, 53 L.Ed.2d 1066 (1977).
The Court then went on to conclude that "the reasonable cause standard requires the commission to consider all reliable probative evidence, including evidence unfavorable to the complainant's claim."Adriani v. CHRO, supra, 220 Conn. 316-317. Finally, the Court stated:
 We conclude that a necessary corollary to allowing the commission to consider all relevant evidence gathered during the investigation is that in making the reasonable cause determination, the investigator, and the commission when reviewing the investigator's recommendation, are entitled to make findings on disputed issues of material fact by weighing the credibility of the witnesses and drawing inferences.
 (Footnotes omitted.) Id., 317. See also Adriani v. Commission on Human Rights Opportunities, 228 Conn. 545 (1994).
As to the first argument, the plaintiff claims that the CHRO committed or allowed procedural irregularities in the processing of his complaint that tainted its final decision. He claims that the CHRO erroneously adopted the recommended decision without furnishing the plaintiff or his counsel with a copy of the instructions on remand or with a copy of SNET's position paper dated February 26, 1996. He also claims that CHRO's denial of his request for extension of time to comment on the draft findings was improper.
Subsection (b) of General Statutes § 46a-83 (rev. to 1992) provides for the investigator to "afford each party and his representative an opportunity to provide written or oral comments on all the evidence in the commission's file, except as otherwise provided by federal law or any other provision of the general statutes." Here investigator Valenzuela noted in the final CT Page 610 decision that both parties had the opportunity to review and comment on the entire file. (ROR 12.) Accordingly, the plaintiff's claim as to the SNET position paper fails.
The plaintiff has provided no statutory or regulatory authority to support his claim that he should have been provided with a copy of the instructions on remand to the new investigator; nor has he alleged specific prejudice that resulted. The court finds no merit in this claim.
It was well within CHRO's discretion to deny the plaintiff's request for an extension of time in August, 1996, The matter had been pending since 1990, and the parties provided with opportunities to review the file and submit evidence. In fact the record measures close to a foot thick with documents submitted by both parties. This claim is without merit.
Finally as to procedural irregularities, the plaintiff claims that the second CHRO investigator allowed SNET to control the amount of information it provided to the CHRO as to comparative evidence; that he unduly restricted the focus of the reconsideration in that he ignored or overlooked the plaintiff's evidence and that he mischaracterized the plaintiff's evidence. The voluminous record does not support these claims. In response to the request of the CHRO, SNET did provide the CHRO investigator with comparative evidence. (ROR 31-36.) The findings of investigator Valenzuela reveal that he considered all reliable probative evidence. That he did not specifically mention each document does not suggest otherwise. See Adriani v. Commission onHuman: Rights Opportunities, supra, 228 Conn. 551.
Turning to the second issue, substantial evidence supports the CHRO's decision. The court has reviewed the documents contained in this record of some 1800 pages, including the findings of March 1992, and August 1996. It has listened to the audio tape of the January 5, 1996 fact finding mandatory mediation conference.[4] Based upon that review and the applicable principles of law, this court will not disturb the determination of the CHRO to find no reasonable cause that a discriminatory practice has been committed as alleged. The CHRO has performed a thorough investigation of the plaintiff's claim by pursuing evidence corroborating as well as contradicting the plaintiff's cause. Under Adriani v. Commission on Human Rights Opportunities, supra, 220 Conn. 319, the CHRO investigator was entitled to resolve "material issues of fact" after a thorough CT Page 611 investigation. Here the CHRO investigator has done just that.
The plaintiff's claim before the CHRO was that SNET gave him poor performance evaluations, denied him pay raises, promotions and bonuses and finally terminated his employment because of his disability from the October 1985 accident. The plaintiff further asserted that a February 8, 1990 letter sent by his attorney to SNET complaining of its discriminatory treatment was a factor in SNET's decision to terminate him. SNET responded by denying the allegations of discrimination and asserting that the plaintiff performed his job poorly and misused company time. It also argued that the plaintiff's supervisors attempted to work with him over the years to correct his weaknesses and that these supervisors were unaware of the plaintiff's disability until after the decision to terminate his employment.
While it is undisputed that the plaintiff, while employed at SNET, had a disability, the issue to be resolved by the investigator was whether that disability was related to the plaintiff's poor job evaluations and ultimate termination from SNET. While it was not necessary that the plaintiff produce direct evidence of discrimination based upon his disability, there must be sufficient facts to show that the employment decisions were not made for legitimate reasons, in order for the investigator to infer that the decisions were made for illegitimate reasons. Levy v. Commission on Human Rights Opportunities, 236 Conn. 96, 107 (1996). The main thrust of the plaintiff's case was the chronology of his obtaining a permanent disability rating which resolved his workers compensation claim with SNET and his unsatisfactory performance evaluations. The record does, however, contain substantial evidence that discounts the inference of discriminatory intent the plaintiff suggests from the timing of events. See Adriani v. Commission on HumanRights Opportunities, supra, 220 Conn. 324.
In his findings on reconsideration the CHRO investigator, after noting that the plaintiff's, performance evaluations were "completely satisfactory" for 1985, 1986 and 1987, stated:
 Credibility comes into play here, more so in light of complainant's admission that he returned to work immediately the day after the accident; that his attendance record summary from 1985 to 1989 did not indicate any time off due to back problems from 1985 to 1989; his admission that he did not request any accommodations; and that his impairment did not affect his ability to do the duties of his CT Page 612 job.
(ROR 26.)
The record supports the CHRO as to the nondiscriminatory bases for the poor performance evaluations, including the plaintiff's responses to those evaluations; for example, see ROR 1640-1651; 1684-1685; 1755-1756; 1765-1773.[5] In addition, the record supports the CHRO's findings that the termination was not in retaliation for the February 8, 1990 letter and the filing of the workers' compensation claim. (ROR 1615-1617.) The plaintiff argues that the CHRO investigator should not have believed the SNET's witnesses in their statements of the plaintiff's poor performance, misuse of company time and their ignorance of his disability prior to the January 26, 1990 conference. As noted above, the CHRO investigator was entitled to resolve material issues of fact and to determine credibility. It is not the prerogative of this court to usurp that role. Menillo v.Commissioner on Human Rights Opportunities. 45 Conn. App. 325,332 (1997) ("The trial court may not disturb the administrative process if the record contains substantial evidence that supports the hearing officer's findings and as long as the board followed the requirements of the statute." (Citations omitted.))
For the above reasons, the appeal is dismissed.
DiPentima, J.